*In re* MARRIAGE OF PENNY FOX, n/k/a Penny Graham, Petitioner-Appellant, and RICHARD A. FOX, Respondent-Appellee.

Fourth District   No. 4—89—0054

Opinion filed December 6, 1989.

Don C. Hammer, of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellant.

Jerry N. Raymer, of Raymer Law Office, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner Penny Graham appeals the denial of a motion pursuant to section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) to vacate a judgment entered on October 18, 1988. Petitioner raises the following issues for our consideration: (1) whether the October 18, 1988, order modifying a prior child custody order is void where no petition was filed pursuant to section 601 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat. 1987, ch. 40, par. 601); (2) whether the trial court erred in ordering a change of custody of the children from petitioner

to respondent as punishment for visitation abuse by the petitioner; (3) whether the trial court's refusal to vacate the order modifying child custody was against the manifest weight of the evidence and constituted reversible error where no hearing was held concerning the best interests of the children. For the reasons that follow, we reverse.

Petitioner and respondent were divorced in 1981. Custody of the parties' minor children, Ashley, now nine years old, and Casey, now eight years old, was awarded to petitioner, and respondent was allowed reasonable visitation. On May 17, 1988, respondent filed a petition for a rule to show cause why petitioner should not be held in contempt for failing to comply with the previous orders of the court regarding visitation with Ashley. The petition alleged petitioner denied respondent visitation with Ashley during the visits scheduled in February, March, and April 1988. Respondent asked that petitioner be found in contempt; that the respondent be awarded attorney fees; and "for such other and further relief as the court deems equitable in the premises."

The hearing on the petition began on June 28, 1988. Respondent testified that from February 1988 through April 1988, he was told by petitioner or her mother, Lois Clodfelder, when he came to pick up his children for a visit that Ashley was not going with him for a visit. Respondent further stated he was not allowed to talk with Ashley on the telephone. Respondent stated that since the filing of the petition in May 1988, his visits with Ashley improved. Respondent stated he did not talk to petitioner about the visitation problems because petitioner had accused him in the past of physically abusing Casey and of not feeding Ashley.

Petitioner testified that she never told respondent he could not visit with Ashley but that Ashley refused to go with respondent on the scheduled visits. According to petitioner, when respondent arrived to pick up the children for a weekend visit, Ashley would hide somewhere in the house and cry. Petitioner testified she encouraged Ashley to talk to and visit with respondent but left it up to Ashley as to whether she would go with respondent. Petitioner stated she packed Ashley's bags each time prior to respondent's arrival for a visit but Ashley continued to refuse to go with respondent. Petitioner testified she never refused to allow respondent to talk with Ashley on the telephone. Petitioner also testified that after the petition at issue in this appeal was filed, Ashley decided to go with respondent on the scheduled visits because, as Ashley told her, respondent started being much nicer to her.

Petitioner's mother, Lois Clodfelder, testified regarding Ashley's

behavior of hiding in the house when respondent arrived for a visit. Clodfelder also reported that on visit days after the petition was filed, Ashley picked up her bag and went with respondent without incident. However, on cross-examination, Clodfelder testified Ashley is still reluctant to go with respondent on a visit.

The hearing on the petition was continued to August 30, 1988. Chad Graham, petitioner's older son from a previous marriage, testified on August 30, 1988, regarding an incident a few days prior to this date when Ashley was upset about visiting with respondent. Chad also testified to a similar occurrence two weeks previous to this incident and stated Ashley had been upset every time that summer when she was getting ready for a visit with respondent. On cross-examination, Chad admitted he did not like respondent and his mother spoke in a derogatory manner about respondent to him.

In rebuttal, respondent presented testimony regarding visits since the first hearing, including an incident which occurred on July 24, 1988. Petitioner testified that Ashley went with respondent at 6 p.m. on July 24 for a three-week visit. Petitioner stated that Ashley called her collect later that evening. Respondent testified that on July 24, Ashley became upset after visiting with respondent's mother and wanted to return home. Respondent testified he took Ashley to his home and stated the visit went smoothly until later that evening when Ashley said she had to call a friend. Ashley later told the respondent she really wanted to call her mother, and respondent testified he dialed petitioner's number for her on a direct, not collect, line. Respondent testified he overheard Ashley say the following to petitioner: "I told him *** I cried and I did just what you told me to. I cried and told him I had to go home and I couldn't come." Respondent testified he took Ashley home that evening when she became upset and again asked to go home. Respondent reported he had similar problems with the two previous visits with his children in July 1988.

Respondent also testified in rebuttal that he returns Ashley home when she gets upset on a visit because he believes Ashley is intimidated at home and he is afraid of the trouble she would get into at home.

The trial judge interviewed Ashley in chambers. Ashley reported respondent is mean to her, calls her names, and spanks her for no reason. Ashley also stated respondent pays more attention to Casey during the visits. Ashley also stated she does not get along with her stepbrothers, children of respondent's current marriage. Ashley stated her grandmother and petitioner's children from a previous marriage do not talk to her about her visits with respondent.

On October 18, 1988, the trial court entered its order on respondent's petition. The trial court found petitioner had been previously found in contempt of court for denying respondent visitation with his children; the contempt charges had no visible impact on petitioner's behavior regarding visitation; petitioner had poisoned the mind of Ashley against respondent and denied respondent a meaningful relationship with Ashley; the matriarchal environment in which Ashley and Casey lived, along with petitioner's conduct, presented a serious danger to the mental and emotional health of the children; respondent can provide a stable and healthy environment for the children; a modification of the September 19, 1983, custody order was necessary for the best interests of the children; it was in the best interests of the children that custody of both be transferred from petitioner to respondent; and that respondent and Ashley should undergo periodic psychological counseling to improve their relationship. Custody of both children was ordered transferred from petitioner to respondent on January 1, 1989, and petitioner was granted visitation with the children. The children are now in respondent's custody.

Petitioner's November 18, 1988, appeal to this court from the October 18 order was dismissed on December 28, 1988, as untimely. (*In re Marriage of Fox* (4th Dist. 1988), No. 4—88—0851 (order of dismissal).) Prior to the dismissal, petitioner filed a motion in the trial court pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) requesting the October 1988 order be vacated and declared void for lack of subject-matter jurisdiction. Petitioner also requested the October 1988 order be vacated due to respondent's failure to fulfill the counseling condition.

On January 6, 1989, the trial court denied petitioner's motion. The trial court, by docket entry and written order, concluded the court had subject-matter jurisdiction to modify the 1983 custody order by virtue of the filing of the show cause petition and had jurisdiction and authority to modify the custody provisions of the dissolution judgment in light of the evidence of petitioner's repeated violations of the court's visitation orders. The trial court also denied petitioner's request for a modification of the October 1988 order, finding petitioner failed to present evidence that the children were endangered while in respondent's care.

Petitioner's primary argument is that the October 1988 order is void for lack of subject-matter jurisdiction. Petitioner maintains the trial court had no jurisdiction to modify the 1983 child custody order where (1) the proceedings involved a show cause petition for contempt of court; and (2) no petition for change of custody was presented to

the trial court as required by section 601 of the Marriage Act. Thus, petitioner argues the denial of her section 2—1401 motion was error.

Respondent argues petitioner is barred from resorting to section 2—1401 to avoid the consequences of her failure to raise the voidness issue in the trial court or seek timely review of the October 18, 1988, order. Assuming petitioner's use of section 2—1401 was correct, respondent contends petitioner failed to prove her right to relief under section 2—1401 with competent evidence. Respondent further argues the October 1988 order is not void and the trial court had continuing subject-matter jurisdiction over child custody issues in this case.

█ █ We first address petitioner's use of section 2—1401 for relief from the October 1988 order. Section 2—1401 provides in part:

"Relief from Judgments. (a) Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. *** All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. There shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable.

(b) The petition must be filed in the same proceeding in which the order or judgment was entered but is not a continuation thereof. The petition must be supported by affidavit or other appropriate showing as to matters not of record. All parties to the petition shall be notified as provided by rule.

(c) The petition must be filed not later than 2 years after the entry of the order or judgment.
* * *

(f) Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1401(a), (b), (c), (f).)

Generally, to be entitled to relief under this section, a party seeking relief must demonstrate (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim in the original action; (3) that, through no fault or negligence of his own, an error of fact or a valid defense or claim was not made to appear at the time the challenged judgment or order was entered; and (4) due diligence in filing the petition for relief under section 2—1401 (now this

section) *(Lazzara v. Dreyer Medical Clinic* (1983), 120 Ill. App. 3d 721, 724, 458 N.E.2d 958, 960 (referring to predecessor section (Ill. Rev. Stat. 1981, ch. 110, par. 72))). However, where relief is sought from a void judgment, section 2—1401, by its express language, does not limit such relief and a party is not required to allege a meritorious defense or due diligence. *LaMotte v. Constantine* (1980), 92 Ill. App. 3d 216, 218, 416 N.E.2d 23, 25.

■ A void judgment is one entered by a court without jurisdiction of the parties or the subject matter or that lacks " 'the inherent power to make or enter the particular order involved.' " *(People v. Wade* (1987), 116 Ill. 2d 1, 5, 506 N.E.2d 954, 955, quoting *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309, 489 N.E.2d 1360, 1363.) Such a judgment may be attacked at any time, either directly or collaterally. *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112, 357 N.E.2d 1154, 1155.

■ Subject-matter jurisdiction of the circuit court as derived from the constitution is the power of the court to hear and determine causes of action. *(O'Connell v. Pharmaco, Inc.* (1986), 143 Ill. App. 3d 1061, 1067, 493 N.E.2d 1175, 1179, *cert. denied* (1987), 479 U.S. 1091, 94 L. Ed. 2d 158, 107 S. Ct. 1303.) Article VI, section 9, of the Illinois Constitution of 1970 provides:

"Circuit courts shall have original jurisdiction of all justiciable matters except ***." (Ill. Const. 1970, art. VI, §9.)

In application to a particular controversy, jurisdiction is the right to hear and determine that controversy. *(Ward v. Sampson* (1946), 395 Ill. 353, 360, 70 N.E.2d 324, 328.) Jurisdiction of the court to hear a particular controversy is invoked by filing an action. *Community Bank & Trust Co. v. Pavlich* (1980), 84 Ill. App. 3d 1080, 1082, 406 N.E.2d 164, 165; Ill. Rev. Stat. 1987, ch. 110, par. 2—201(a).

■ In Black's Law Dictionary, "justiciable" is defined, "[m]atter appropriate for court review"; "matter" is defined, "[s]ubstantial facts forming basis of claim or defense; facts material to issue; substance as distinguished from form; transaction, event, occurrence; subject-matter of controversy." Black's Law Dictionary 777, 882 (5th ed. 1979).

■ Filing a petition for contempt with respect to visitation in a dissolution proceeding does not present to the trial court a "justiciable matter" sufficient for the trial court to make a child custody determination. The justiciable matter before the court was an alleged violation of the visitation provisions of the judgment of dissolution. Child custody was not.

■ In denying the section 2—1401 petition, the trial judge con-

cluded the court's subject-matter jurisdiction over child custody matters was invoked by the rule to show cause petition. This was error. The record reflects no petition initiating a child custody proceeding was filed as provided in section 601(b) of the Marriage Act. (Ill. Rev. Stat. 1987, ch. 40, par. 601(b).) Further, nowhere in this record is there any indication petitioner was notified as required by section 601(c) that the hearing on the contempt petition would involve custody issues. (Ill. Rev. Stat. 1987, ch. 40, par. 601(c).) Notwithstanding the lack of a petition, the record establishes no evidence was presented or findings stated as required under section 610(b). (Ill. Rev. Stat. 1987, ch. 40, par. 610(b).) Indeed, respondent could not have known custody of her children was at issue in the contempt proceedings until the trial judge made his decision. Child custody matters are not somehow brought within the jurisdiction of the trial court by virtue of the filing of a contempt action involving visitation issues. Indeed, the supreme court in *Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 259 N.E.2d 282, noted the independent nature of contempt proceedings in relation to the principal action. We find *Kazubowski* supports our decision here.

We find further support for our conclusion in a recent case, *Ottwell v. Ottwell* (1988), 167 Ill. App. 3d 901, 522 N.E.2d 328. There, the court found the circuit court's jurisdiction to modify child support orders was not properly invoked by the filing of petition for citation by the Illinois Department of Public Aid. The court noted section 511 of the Marriage Act expressly provided for the filing of a petition, with notice to the respondent, to enforce or modify orders entered in a dissolution of marriage proceeding. (Ill. Rev. Stat. 1987, ch. 40, par. 511.) The lack of such a petition rendered the orders modifying child support void. We adopt the reasoning of the *Ottwell* court.

■ Of the many aspects of a dissolution proceeding, child custody is of utmost importance. The provisions of section 601 set the procedures; section 602 mandates that the court shall determine custody in accordance with the "best interest of the child." (Ill. Rev. Stat. 1987, ch. 40, pars. 601, 602.) Although the court "may" appoint a representative for the child in a dissolution proceeding, representation is not mandated. (Ill. Rev. Stat. 1987, ch. 40, par. 506.) The supreme court's recent decision in *Simcox v. Simcox* (1989), 131 Ill. 2d 491, involving paternity issues, underscores the importance of children's interests in dissolution proceedings.

The term "subject-matter jurisdiction" does not extend to the circumstances of this case. We conclude, however, that the trial court's October 1988 order is void because the jurisdiction of the court was

not properly invoked. Children are not pawns, nor can this court allow custody to be used as a penalty in the absence of compliance with the provisions of the Marriage Act. Thus, the order was subject to collateral attack under section 2—1401.

Since we find the October 1988 order is void, the trial court erred in denying the section 2—1401 petition to vacate this order. While we need not consider the remaining issues, we believe some of these issues may arise again between these parties and thus, these issues will be addressed.

■ It is abundantly clear from this record that the relationship between petitioner and respondent is less than amicable and may be characterized as quite hostile. Repeated allegations of interference with respondent's visitation rights have brought petitioner before the trial court in contempt proceedings on numerous occasions. While we are cognizant of the trial judge's apparent frustration with these matters, remedies for visitation abuse other than change of custody are provided in section 607.1 of the Marriage Act. (Ill. Rev. Stat. 1987, ch. 40, par. 607.1.) Moreover, we note that the courts of this State have consistently held that a change of custody is an improper remedy to punish a custodial parent's contumacious interference with visitation rights. (*In re Custody of Ehr* (1979), 77 Ill. App. 3d 540, 396 N.E.2d 87; *Clark v. Clark* (1971), 1 Ill. App. 3d 69, 273 N.E.2d 26; *Eggemeyer v. Eggemeyer* (1967), 86 Ill. App. 2d 224, 229 N.E.2d 144; *Szczawinski v. Szczawinski* (1962), 37 Ill. App. 2d 350, 185 N.E.2d 375; *Bulandr v. Bulandr* (1959), 23 Ill. App. 2d 299, 162 N.E.2d 585.) The trial court may always enforce its visitation orders by way of contempt as was contemplated in this case by the filing of a show cause petition. However, after the proceedings in this case were concluded, the trial judge expressly refused to find petitioner in contempt but removed the children from her custody, in part "as punishment for past acts of misconduct" in regard to visitation. We believe the trial judge's actions in this case constitute an abuse of discretion.

For the foregoing reasons, the order of the trial court denying petitioner's motion under section 2—1401 is reversed. The order of the trial court modifying the custody of the parties' minor children is reversed.

Reversed.

SPITZ and GREEN, JJ., concur.