MARTIN A. KAPP, Plaintiff-Appellant, v. TERRI L. ALEXANDER, Defendant-Appellee.

Third District   No. 3—91—0017

Opinion filed August 28, 1991.

Michael Albert, of Blodgett, Reese, Merritt & Albert, of Rock Falls, for appellant.

Walter C. Kilgus, of Nelson, Kilgus, Richey & Hauptman, of Morrison, for appellee.

JUSTICE GORMAN delivered the opinion of the court:

This case involves a complaint to determine the existence of a father and child relationship. The plaintiff, Martin A. Kapp, alleged that he was the father of L.C., that the defendant, Terri L. Alexander, was the mother of L.C., and that it was in the best interests of the child that he have custody of the child or have rights of visitation with the child. The plaintiff sought a finding that a father and child relationship existed, sought custody of or rights of visitation with the child, and sought other unspecified relief. The circuit court determined that the plaintiff had filed the complaint after the applicable limitations period had expired. The circuit court further determined that the plaintiff failed to prove that the defendant had engaged in conduct which estopped her from raising the statute of limitations as a defense. Based on these determinations, the circuit court dismissed plaintiff's cause of action. The plaintiff appeals. We affirm.

On July 30, 1987, L.C. was born to the defendant, Terri L. Alexander (the mother). The parties agree that the father of L.C. is the plaintiff, Martin A. Kapp (the father), and that the mother informally acknowledged that the plaintiff was the father on numerous occasions

prior to this lawsuit. Prior to this lawsuit, the plaintiff has never been acknowledged to be L.C.'s father by either party in any official document or proceeding.

The father first saw the child around September 1988. From sometime in September 1988 until sometime in April 1989, the parties dated and became engaged to be married, according to the father's testimony. The parties' testimony differs regarding whether the father saw the child frequently during this period and regarding whether the father paid any money for the child's support during this period.

In April 1989 the parties broke off their relationship. The father's testimony, while not entirely clear on this point, seems to be that the mother became involved with another man around this time. The father testified that the mother permitted him to have "regular" visitations with the child after the parties broke off their relationship, while the mother testified that the father hardly ever saw the child during any time period.

The father testified that, from sometime in the summer of 1989 until sometime in late December 1989, the parties were back together again "off and on." According to the father the parties promised in early December 1989 that they were going to get back together and get married. The father testified that the parties broke up again in late December 1989, but that the mother told him he could see the child whenever he wanted.

The father testified he set up a bank account in January 1990 for the support of the child. He introduced a copy of a computer printout showing that deposits of $25 were made almost every week, while four withdrawals were made between January 1990 and July 1990. He claimed that the mother made these withdrawals for support of the child, but the mother testified that the amounts she withdrew were for repayment of money the father owed her.

The mother married another man April 23, 1990. The last time the father was permitted to see the child was at a birthday party for the child held on July 30, 1990.

On August 30, 1990, the father filed this lawsuit. Shortly thereafter the mother filed a motion to strike the complaint for being time barred, noting that section 8(a)(2) of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1989, ch. 40, par. 2508(a)(2)) limited to two years after the birth of the child the period within which an action to establish a father and child relationship could be brought by a person other than the child. The trial court conducted an evidentiary hearing on December 10, 1990, and concluded that the father failed to establish that the mother's conduct estopped her from raising the statute of

limitations as a defense. A written order dismissing the father's cause of action was entered on December 20, 1990. The father filed a notice of appeal on January 8, 1991.

The first issue presented by the father is whether the trial court erred in dismissing the part of the complaint seeking custody or visitation, rather than just the portion seeking the establishment of a father and child relationship. Section 9(a) of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1989, ch. 40, par. 2509(a)) states in part:

"In any civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue."

The father correctly reasons that the statute of limitations in the Parentage Act applies only to actions under the Illinois Parentage Act of 1984 (Parentage Act) (Ill. Rev. Stat. 1989, ch. 40, par. 2501 *et seq.*), such as actions to establish the existence of a parent and child relationship, and to any other civil actions where "parentage is at issue." The father contends that since the mother admitted on any number of occasions (including under oath at the hearing on the motion to dismiss) that he was the child's father, this is not a case where "parentage is at issue." He then reasons that since he cited no statutes in his complaint, the two-year statute of limitations of section 8(a)(2) of the Parentage Act applies only to his request to establish a father and child relationship (a remedy which is possible only under the Parentage Act), but does not apply to his request for custody or visitation rights (a remedy which he claims is available to him under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*)).

■ Prior to enactment of the Parentage Act, there was no statutory provision addressing the situation in which a natural father sought custody or rights of visitation with his child where the child had been born out of wedlock and the child's parents had never married. (See *Klawitter v. Crawford* (1989), 185 Ill. App. 3d 778, 781, 541 N.E.2d 1159, 1161.) The courts permitted natural fathers in that situation to utilize several procedural routes to attempt to gain custody or rights of visitation with their children. Those procedural routes included *habeas corpus* actions (*People ex rel. Irby v. Dubois* (1976), 41 Ill. App. 3d 609, 354 N.E.2d 562), declaratory judgment actions (*Pritz v. Chesnul* (1982), 106 Ill. App. 3d 969, 436 N.E.2d 631), actions under the Illinois Marriage and Dissolution of Marriage Act (*In re Custody of Myer* (1981), 100 Ill. App. 3d 27, 426 N.E.2d 333), actions under the Juvenile Court Act (*In re Ritchie* (1978), 58 Ill. App. 3d 1045, 374 N.E.2d 1292), and actions under the Probate Act (*In re Estate of Becton* (1985), 130 Ill. App. 3d 763, 474 N.E.2d 1318). The Parentage

Act specifically addresses this situation, and provides not only for the establishment of a father and child relationship but also for custody, child support, and visitation privileges (see Ill. Rev. Stat. 1989, ch. 40, par. 2514). In addition, by virtue of that part of section 9(a) quoted above, the legislature sought to have provisions of the Parentage Act apply whenever "parentage is at issue" in any civil action. It is our view that natural fathers in this situation may not avoid the provisions of the Parentage Act (including its statute of limitations) by using alternative procedural routes in seeking to obtain incidents of the father and child relationship (such as custody or visitation rights), unless such a relationship has previously been legally established.

■ Section 4 of the Parentage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 2504) states in part:

"The parent and child relationship between a child and

(1) the natural mother may be established by proof of her having given birth to the child, or under this Act;

(2) the natural father may be established under this Act."

Section 7(a) of the Parentage Act permits a man "presumed or alleging himself to be the father of the child" to bring an action to determine the existence of the father and child relationship (Ill. Rev. Stat. 1989, ch. 40, par. 2507(a)).

■■■ Section 2 of the Parentage Act states as follows:

"As used in this Act, 'parent and child relationship' means the *legal relationship* existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 40, par. 2502.)

In examining the Parentage Act as a whole it is clear that the legislature used the expressions "parent and child relationship," "mother and child relationship," and "father and child relationship" as terms of art. These expressions refer to something more than simply biological relationships and are meant to include the legal relationships. When section 9(a) of the Parentage Act applies provisions of the Act to civil actions not brought under the Act, it does so where "parentage is at issue." In our view "parentage is at issue" whenever a parent and child relationship is the basis for some "right, privilege, duty or obligation" (see Ill. Rev. Stat. 1989, ch. 40, par. 2502), but such a relationship has not been established (or presumed) as provided for in the Parentage Act. Simply because no party disputes biological par-

entage is not a sufficient basis for concluding that a case is not one where "parentage is at issue."

The father relies on *In re Petition of Padin* (1989), 193 Ill. App. 3d 554, 550 N.E.2d 276, to support his contention that where parentage is not disputed, a father of a child born out of wedlock can seek custody or visitation directly under the provisions of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*), rather than under the Illinois Parentage Act of 1984 (Parentage Act) (Ill. Rev. Stat. 1989, ch. 40, par. 2501 *et seq.*), and thereby avoid the limitations period of the Parentage Act.

We distinguish *Padin* from the present case, because in *Padin* a judicial determination of parentage had been made in an adoption case prior to the father's filing his petition to establish the existence of a parent and child relationship and to obtain visitation rights. No prior judicial determination or legal presumption existed in this case which relieved the father of the burden of establishing the father and child relationship under the Parentage Act.

■ To accept the father's argument would mean that a natural father could assert rights to custody or visitation many years after the birth of the child, perhaps after the natural mother has died, despite having had nothing to do with the child. This is precisely the situation (or one of the situations) the legislature sought to avoid in enacting the statute of limitations of the Parentage Act and in enacting the provision of the Parentage Act applying the Act to civil actions where "parentage is at issue."

We hold that the trial court did not err in striking and dismissing the entire complaint under the statute of limitations of the Parentage Act, as opposed to just the portion seeking the establishment of a father and child relationship.

The second issue the father raises is whether the trial court erred in deciding that the mother should not be equitably estopped from raising the statute of limitations as a defense.

■ All that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 159, 421 N.E.2d 869, 876.) However, where a defendant's conduct terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have, the doctrine will not apply. (*Neaterour v. Holt* (1989), 188 Ill. App. 3d 741, 749, 544 N.E.2d 846, 852.) If the facts necessary to constitute equitable estoppel are in dispute or if reasonable minds might differ as to the inferences to be drawn from undisputed evidence, then the issue of

whether equitable estoppel is raised becomes a question of fact. See *Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 369, 335 N.E.2d 491, 494.

The trial court based its decision regarding equitable estoppel on the testimony of the father, which demonstrated that the parties' relationship had never been a stable one. The parties broke off their engagement in April 1989, several months prior to the end of the two-year limitations period. While the father testified in vague terms about having "regular" visitation with the child after the engagement was broken, the mother testified that the father hardly ever saw the child. We cannot say that the trial court's determination on this question was against the manifest weight of the evidence.

While not raised by the parties, we address the issue of whether this cause should be remanded and the circuit court directed to appoint a guardian *ad litem* to represent the interests of the child. For the reasons expressed in *Klawitter v. Crawford* (1989), 185 Ill. App. 3d 778, 541 N.E.2d 1159, we decline to do so.

We affirm the decision of the circuit court.

Affirmed.

McCUSKEY and HAASE, JJ., concur.