LESLIE LIGON, on Behalf of Tiffany Williams, a Minor, Plaintiff-Appellant, v. DARRYL WILLIAMS, Defendant-Appellee.

First District (2nd Division)    No. 1—94—0445

Opinion filed June 28, 1994.

Legal Aid Bureau, of Chicago (Victor Brown, of counsel), for appellant.

Steven O. Hamill, of Homewood, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Leslie Ligon and defendant Darryl Williams, who are unmarried, are the parents of two children, Tiffany, born on October 18, 1987, and Bianca, born on March 28, 1989. (Bianca is not involved in this case.) In November and December of 1987, plaintiff filed two complaints through the State's Attorney pursuant to the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 *et seq.* (West 1992)), requesting the court to find a parent-child relationship between Tiffany and defendant and to order defendant to pay child support.

Summons issued, but three attempts to effect service of process upon defendant resulted in the sheriff's return of "not found." In May 1988, in response to the State's request, the trial court ordered the case taken off call and referred to the Parent Locator Service. On March 11, 1992, defendant was finally served with summons and a hearing was set for April 22, 1992. The State's Attorney sent notice

of the hearing to plaintiff by mail, but she contends that she never received it.

At the hearing on April 22, 1992, only Cynthia Ashford, an assistant State's Attorney, and defendant, appearing *pro se*, were present. Defendant admitted paternity and Ashford informed the court that Tiffany was staying with defendant. The judge then stated: "It looks, apparently from the papers, that you are a more fit individual, with the limited information I have[,] to take and assume custody of the child, which [*sic*] is in your custody anyway." In response to questioning by the judge, defendant stated that Tiffany had been staying with him for the past three months. The judge then declared: "All right. Custody to the father." After the hearing, the court granted the State's Attorney's motion to dismiss the duplicate paternity action. It also entered its order finding that a parent-child relationship existed between defendant and Tiffany, reserving the issues of support and health insurance, and granting custody to defendant.

The parties agree that the "papers" the judge was referring to were the contents of an April 16, 1992, three-page letter from Ms. Dawery of the Illinois Department of Public Aid (IDPA or the Department) to Karyn Aguirie of the Cook County State's Attorney's office. The letter stated that plaintiff's grandmother had informed the IDPA that plaintiff leaves the children alone at night, does not pay rent, and does not buy food for the children, and that, as of February 19, 1992, Tiffany and Bianca were staying with defendant. According to the letter, plaintiff's grandmother recalled that her husband had found the children alone in their apartment with a strange man on one occasion. She also recalled another occasion when Bianca had a high fever and plaintiff could not be found, so defendant came and took her to the doctor. Plaintiff's grandmother expressed her suspicion that plaintiff had a drug problem. Dawery's letter also recounted that the Headstart director where Tiffany attended school stated that Tiffany had been brought to the doctor for a medical condition by school personnel, under their authority derived from a consent form signed by plaintiff, after plaintiff did not respond to several requests that she take Tiffany to a doctor. According to the letter, defendant stated to a Department "income maintenance specialist" that the children were with him, that he had always supported them, and that plaintiff had told him that he could have permanent custody of the girls. Finally, the letter related unsuccessful attempts by IDPA personnel to discuss with plaintiff her reported neglect of the girls.

On October 26, 1992, plaintiff filed her "Petition to Return

Custody" in which she stated that defendant never regularly paid child support, that she had signed a parentage complaint regarding Bianca, but defendant could not be found, and that both children were in her custody until April 1992 when defendant came with the police, showed her some "paper," and forced her to turn Tiffany over to him. She did not receive a copy of the "paper." She further stated that she had no notice of the April 22 hearing and that she was unaware of any court action on her case "since nothing had happened on the old cases in years." Plaintiff averred that after defendant took Tiffany, she made numerous telephone calls unsuccessfully trying to find out where defendant got his "court paper." She also stated that she tried to retain an attorney several times, but because she did not have the money for an "up front" fee, she was unable to retain counsel until August 1992 when she learned of the Legal Aid Bureau and obtained representation through that organization. Plaintiff stated that the records in the case showed that the State's Attorney failed to send her notice of the April 22 hearing. She contended that the court's order was "unfair, improper, and in violation of due process," and that it should be "declared a nullity and of no force and effect." Plaintiff also requested that custody of Tiffany be immediately returned to her. Finally, she asked the court to order the State's Attorney to appear and show proof, if any, of notice and "other relevant matters." Plaintiff certified her petition in accordance with section 1—109 of the Code of Civil Procedure (735 ILCS 5/1—109 (West 1992)).

Defendant then filed a section 2—615 (735 ILCS 5/2—615 (West 1992)) motion to strike and dismiss plaintiff's petition. Defendant noted omissions from the petition, including copies of summonses issued for him, the complaints plaintiff allegedly filed under the Parentage Act, the exact date in April 1992 when defendant allegedly went to plaintiff's apartment and took Tiffany, the branch of the police who allegedly accompanied him on that date, dates when plaintiff allegedly made telephone calls in search of information regarding defendant's "court paper," and copies of documents from the records referred to in the petition. Defendant argued that he could not adequately respond to plaintiff's petition in the absence of the above-mentioned documents and information.

On May 28, 1993, the court held a hearing on plaintiff's petition and defendant's motion at which plaintiff argued that the issue of custody was not properly before the court on April 22, 1992. Upon questioning by the court, plaintiff testified that Tiffany went to defendant's house about three weeks before the hearing in April 1992, but before that, she was with her. She further testified that she

was unaware of the April 1992 court date. Defendant interrupted plaintiff's testimony, requesting a ruling on his motion to dismiss before "getting into the evidentiary hearing." The judge stated that he was trying to determine if disturbing his earlier judgment would be in Tiffany's best interests. Plaintiff's counsel responded that "the matter of best interest and custody is really not before the Court. \*\*\* Not today. Not on my motion [sic]." The trial judge then granted defendant's motion, stating:

> "I'm satisfied you [plaintiff] haven't presented the necessary documents necessary to overturn the counts [sic]. I'd suggest the next time you get either a statement from the Assistant State's Attorney who presented the matter to me, who was present in court at that time, and whatever document[s] they have, since they were originally her lawyer. That's the ruling of the Court. They're represented—They made a representation to the Court they were still representing her at that time."

On September 14, 1993, the trial court granted plaintiff's motion to reconsider its May 28 order and, on November 22, 1993, the court set a hearing date for January 6, 1994, ordering Assistant State's Attorney Ashford and Ms. Dawery of the IDPA to appear at the hearing. The November 22 order also awarded visitation rights to plaintiff in the interim. The assistant State's Attorney moved to quash the subpoena addressed to her, stating that she did not represent plaintiff regarding custody at the April 22, 1992, hearing, that the Parentage Act prohibited such representation by the State's Attorney, and that she had no knowledge of the issue of notice to plaintiff regarding the custody matter.[1]

Following the hearing on January 6, 1994, at which the court heard argument from counsel, the court denied plaintiff's petition to return custody.[2] Plaintiff now appeals.

Plaintiff argues that the trial court's ruling awarding custody of Tiffany to defendant is void because the issue of custody was not properly before the court, noting that the parentage petition was not

---

[1]The trial judge apparently did not rule on the motion to quash.

[2]A transcript from the January 6 hearing is not in the record. Plaintiff explains that the trial judge stated that she would have to pay for a court reporter and that she lacked the funds to do so. Plaintiff ignores Supreme Court Rule 323 (134 Ill. 2d R. 323), permitting appellants to prepare a bystander's report or an agreed statement of facts in lieu of a transcript of proceedings. The record is nonetheless sufficient for us to rule on the issue of whether the judge's April 22 custody order was void, particularly since no testimony or evidence was taken at the January 6 hearing. See *Skrypek v. Mazzocchi* (1992), 227 Ill. App. 3d 1, 5, 590 N.E.2d 990, 993.

directed at custody. She further argues that the trial judge violated the Parentage Act by not affording her an opportunity to seek representation at the hearing held on Tiffany's custody. She finally argues that the proceedings on Tiffany's custody were conducted in violation of her due process rights since she had no notice that the court was going to consider the issue of custody.

Both parties agree that although plaintiff's petition for return of custody was not labeled as such, it was brought pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1992)), which allows for relief from final judgments after 30 days from their entry, under certain circumstances. (See *Northern Illinois Gas Co. v. Midwest Mole, Inc.* (1990), 199 Ill. App. 3d 109, 115, 556 N.E.2d 1276, 1280-81 (when a motion to vacate a judgment is brought more than 30 days after its entry, it must be construed as a section 2—1401 petition).) Under that provision, the petitioner must show through specific factual allegations: due diligence in the original action, due diligence in pursuing relief under section 2—1401, and a meritorious claim or defense. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381, 1386.) Trial judges have broad discretion in determining whether to grant relief under section 2—1401, depending on the facts and equities presented. *Airoom*, 114 Ill. 2d at 221, 499 N.E.2d at 1386.

Defendant argues that plaintiff has not shown a meritorious defense or due diligence, overlooking the fact that the basis of plaintiff's claim is that the trial court's order is void. Section 2—1401 does not "affect[] any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." (735 ILCS 5/2—1401(f) (West 1992).) A judgment is void if the court lacked jurisdiction over the parties or subject matter, or if it "lack[ed] the inherent power to enter the particular order involved." (*Skrypek*, 227 Ill. App. 3d at 5, 590 N.E.2d at 993.) It is axiomatic that a void judgment can be attacked at any time, directly or collaterally. (*E.g.*, *Thayer v. Village of Downers Grove* (1938), 369 Ill. 334, 339, 16 N.E.2d 717, 719; *In re Marriage of Macino* (1992), 236 Ill. App. 3d 886, 888, 603 N.E.2d 105, 107.) Therefore, while defendant correctly points out that the due diligence and meritorious claim or defense requirements of section 2—1401 must be shown when a petitioner attempts to have a validly entered judgment vacated on equitable grounds, a petitioner need not demonstrate due diligence and a meritorious claim or defense if seeking relief from a void judgment. *In re Marriage of Fox* (1989), 191 Ill. App. 3d 514, 520, 548 N.E.2d 71, 74, *appeal denied* (1990), 131 Ill. 2d 558, 553 N.E.2d 395.

Accordingly, the fundamental issue in the present case is whether

the court's order granting defendant custody of Tiffany was issued without authority and was void. Circuit courts have "original jurisdiction of all justiciable matters" with only limited exceptions. (Ill. Const. 1970, art. VI, § 9.) A justiciable question is one which involves the adverse legal interests of the parties. (See *Exchange National Bank v. County of Cook* (1955), 6 Ill. 2d 419, 422, 129 N.E.2d 1, 3.) The court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition. (See *Fox*, 191 Ill. App. 3d at 520, 548 N.E.2d at 75; see also 735 ILCS 5/2—201 (West 1992) ("Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint").) These pleadings function to frame the issues for the trial court and to circumscribe the relief the court is empowered to order; a party cannot be granted relief in the absence of corresponding pleadings. (See *Tembrina v. Simos* (1991), 208 Ill. App. 3d 652, 656, 567 N.E.2d 536, 539, *appeal denied* (1991), 139 Ill. 2d 605, 575 N.E.2d 924; *Bartsch v. Gordon N. Plumb, Inc.* (1985), 138 Ill. App. 3d 188, 200, 485 N.E.2d 1105, 1114-15.) Thus, the circuit court's jurisdiction, while plenary, is not boundless, and where no justiciable issue is presented to the court through proper pleadings, the court cannot adjudicate an issue *sua sponte*. Orders entered in the absence of a justiciable question properly presented to the court by the parties are void since they result from court action exceeding its jurisdiction. See *Thayer*, 369 Ill. at 339, 16 N.E.2d at 719 ("[E]very act of the court beyond its jurisdiction is void").

Plaintiff relies on *In re Marriage of Fox* (1989), 191 Ill. App. 3d 514, 548 N.E.2d 71, to support her contention that the court's order is void because its jurisdiction was not properly invoked. In *Fox*, the former husband filed a petition for a rule to show cause why his former wife should not be held in contempt for interfering with his visitation rights. Following a hearing on the petition, the trial judge found that it was in the children's best interests for the former husband to have custody of them and ordered the transfer of custody. We held that the court's order was void because the jurisdiction of the court concerning custody was not properly invoked through the filing of a petition. (*Fox*, 191 Ill. App. 3d at 521-22, 548 N.E.2d at 75-76.) We also noted that no evidence was presented and the judge failed to state his findings, both of which are requirements of the Illinois Marriage and Dissolution of Marriage Act's (Dissolution Act's) provision on modifying custody judgments. *Fox*, 191 Ill. App. 3d at 521, 548 N.E.2d at 75-76; see also 750 ILCS 5/610(b) (West 1993).

Similarly, in *Ottwell v. Ottwell* (1988), 167 Ill. App. 3d 901, 522 N.E.2d 328, we reversed the trial court's order reducing the ex-

husband's child support obligations in the absence of a petition to modify child support payments. (*Ottwell*, 167 Ill. App. 3d at 908-09, 522 N.E.2d at 332-33.) We held that in the absence of a petition to modify child support and notice to the ex-wife, the trial court's subject matter jurisdiction had not been invoked; therefore, the order, entered in violation of the Dissolution Act's provisions and without regard to the ex-wife's rights to child support, was void. *Ottwell*, 167 Ill. App. 3d at 908-09, 522 N.E.2d at 332-33.

The *Fox* and *Ottwell* holdings are, by analogy, instructive to the extent that they are grounded in analyses of the trial court's jurisdictional authority. Like *Fox* and *Ottwell*, the circuit judge in the case at bar acted without authority in rendering an order affecting custody because custody was not a justiciable matter before him. An examination of the Parentage Act's provisions reveals that his authority to hear and decide the issue of Tiffany's custody was not activated through the proper procedural mechanism. The judgment of the trial court in a Parentage Act proceeding may contain custody provisions "which the court shall determine in accordance with the relevant factors set forth in the [Dissolution Act] ***, and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child." (750 ILCS 45/14(a)(1) (West 1992).) The Dissolution Act directs the trial court to consider several factors in its determination of the child's best interests, including the wishes of the parties, the mental and physical health of all the parties, and the child's adjustment to her home, school, and community. 750 ILCS 5/602 (West 1992).

■ The Parentage Act provides that upon the mother's request, the State's Attorney may represent her in the trial court. (750 ILCS 45/18(b) (West 1992).) However, the statute goes on to provide that the State's Attorney's representation is limited only to "the establishment and enforcement of an order for support, and *shall not extend to visitation, custody, property or other matters.*" (Emphasis added.) (750 ILCS 45/18(b) (West 1992).) If custody is "raised by a party and considered by the court," the court "shall provide a continuance sufficient to enable the mother *** to obtain representation for such matters." (750 ILCS 45/18(b) (West 1992).) In the case at bar, the only justiciable questions raised by the parentage petition were the establishment of a parent/child relationship between Tiffany and defendant and his obligation to support the child. Plaintiff sought no relief pertaining to custody and defendant filed no petition or counterclaim seeking custody. The trial court thus had no authority to decide the issue of custody. See *In re Estates of Rice* (1979), 77 Ill. App. 3d 641, 656-57, 396 N.E.2d 298, 310 (courts may not "attempt to

resolve controversies which have not been properly presented to them for, if they should do so, it would violate not only the precepts of constitutional due process, but would fly in the face of our tradition of adversary litigation").

Therefore, the court acted without jurisdiction and its custody order is null and void. See *Fox*, 191 Ill. App. 3d at 522, 548 N.E.2d at 75; see also *In re Marriage of Zukausky* (1993), 244 Ill. App. 3d 614, 618-19, 613 N.E.2d 394, 398-99 (reversing the trial court's order raising the respondent's child support payments when the only pleading before it was the respondent's petition seeking to reduce his child support); *Rice*, 77 Ill. App. 3d at 656, 396 N.E.2d at 310 (the issue of who should control a foundation was not properly presented to the court in "any form of recognized legal procedures" and, consequently, the court's resolution of that issue was reversed).

■ Defendant maintains that dissolution cases are inapposite to the case at bar because the Parentage Act contains no pleading requirements comparable to those in the Dissolution Act. In fact, he contends that the Parentage Act is silent regarding pleading and procedure for custody. Plaintiff apparently agrees, urging us to declare that custody cannot be determined in a paternity action unless a party raises the issue in a pleading. We have previously held, however, that the Paternity Act provides the procedural mechanism for an unwed father to seek custody of his child prior to a determination of parentage.[3] (*Kapp v. Alexander* (1991), 218 Ill. App. 3d 412, 415-16, 578 N.E.2d 285, 287-88.) Section 7 of the Parentage Act states that "[a]n action to determine the existence of the father and child relationship *** may be brought by *** a man presumed or alleging himself to be the father of the child." (750 ILCS 45/7(a) (West 1992).) The statute defines a parent and child relationship, which includes that of father and child, as "the legal relationship existing between a child and his [father] *** incident to which the law confers or imposes rights, privileges, duties, and obligations." (750 ILCS 45/2 (West 1992).) Custody is obviously an aspect of the legal relationship between a father and child. We therefore find that the legislature has provided the procedural course for a putative father to file an action seeking custody within the framework of the Parentage Act. Courts in parentage proceedings are thus bound to consider custody determinations upon the proper filing of an action and in accordance with the best interests of the child, following the statutory guidelines in the Dissolution Act. (750 ILCS 5/602 (West 1992).) To hold that the

---

[3]After parentage has been determined, a parent may petition for custody under section 601 of the Dissolution Act. 750 ILCS 5/601(b)(1) (West 1993).

trial court in a parentage proceeding may raise and determine custody issues in the absence of any pleading on the issue would not only ignore the provisions of the Parentage Act, but would unconstitutionally afford trial courts unbridled authority to issue such orders regardless of whether the parties presented them with a justiciable question.

■ Moreover, even if the issue of custody had been brought before the court, the trial judge failed to continue the proceedings in order that plaintiff could be provided with notice and an opportunity to retain representation. The judge's comments at the May 28 hearing indicate that he believed that the State's Attorney could represent plaintiff regarding custody. However, as indicated above, the Parentage Act expressly prohibits the State's Attorney from representing a mother on custody matters. 750 ILCS 45/18(b) (West 1992).

■ Although the Parentage Act requires a continuance when a "party" raises the issue of custody, the fact that in this case the judge raised the issue is of no consequence in terms of plaintiff's right to retain representation. In addition, we find the judge's rather cursory assessment of Tiffany's best interests to be at odds with the statutory guidelines in the Dissolution Act. We realize that the judge was justifiably concerned about plaintiff's ability to care for Tiffany after reading the IDPA letter, but he did not adequately explore the issue of Tiffany's best interests, questioning defendant only about his employment status and concluding only on the basis of the IDPA letter that plaintiff was not as fit as defendant. (See *In re Petition of Padin* (1989), 193 Ill. App. 3d 554, 558, 550 N.E.2d 276, 278 (a determination of whether visitation with the father is in the best interests of the child is appropriately arrived at by conducting a hearing on the issue), *appeal denied* (1990), 132 Ill. 2d 547, 555 N.E.2d 378.) In our view, such minimal inquiries were inconsistent with the crucial determination of Tiffany's best interests.

■ Finally, plaintiff argues that the trial court's consideration of Tiffany's custody without providing plaintiff with notice deprived her of her procedural due process rights. Since we have already determined that the Parentage Act required notice to plaintiff that custody was an issue before the court, we find no need to address plaintiff's constitutional due process argument, except to observe that it is patent that the proceeding in this case lacked the rudimentary requirements of procedural due process. Due process consists of notice and an opportunity to be heard "in an orderly proceeding adapted to the nature of the case." (*In re J.M.* (1988), 170 Ill. App. 3d 552, 564, 524 N.E.2d 1241, 1249.) Here, plaintiff had no notice that custody would be dealt with at the parentage hearing and

no opportunity to rebut the allegations contained in the IDPA letter. See *In re Marriage of Gordon* (1992), 233 Ill. App. 3d 617, 643-44, 599 N.E.2d 1151, 1168-69 (the mother's due process rights were violated when the court conducted an *ex parte* hearing pursuant to the Domestic Violence Act and entered an order giving "uninterrupted visitation" and "possession" of her son to her ex-husband in the absence of exigent circumstances), *appeal denied* (1992), 147 Ill. 2d 626, 606 N.E.2d 1226; *cf. Stanley v. Illinois* (1972), 405 U.S. 645, 651, 31 L. Ed. 2d 551, 558, 92 S. Ct. 1208, 1212 (holding that unwed fathers are entitled to hearings on their fitness as parents before the State may take their children from them and recognizing that the "interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements,' " quoting Frankfurter, J., concurring in *Kovacs v. Cooper* (1949), 336 U.S. 77, 95, 93 L. Ed. 2d 513, 527, 69 S. Ct. 448, 458); *Miske v. Department of Children & Family Services* (1982), 110 Ill. App. 3d 278, 442 N.E.2d 273 (holding that a natural father had superior right to custody of his child over a third party and that "serious constitutional problems arise when the State *** proposes to take away the child of a natural parent without the requisite due-process [*sic*] safeguards").

■ Since we have found that the trial judge's order was void, both because the issue of custody was not before the court and because plaintiff received no notice of proceedings challenging her right to custody of Tiffany as required by the Parentage Act, we are constrained to order a return to the status quo *ante* by vacating the custody order and reinstating custody with plaintiff. (See *Fox*, 191 Ill. App. 3d at 521-22, 548 N.E.2d at 75-76; see also *People ex rel. Buell v. Bell* (1959), 20 Ill. App. 2d 82, 155 N.E.2d 105 (mother of child born out of wedlock had right to custody of child so long as she was fit and able to provide for the child); see generally 98 A.L.R.2d 417 (1964 & Supp. 1993) (and cases cited therein).) We are deeply troubled by the fact that Tiffany has now been in her father's custody for 26 months and will be required to readjust to being in her mother's care. We note, however, that plaintiff has had visitation rights with Tiffany for the duration of this litigation and that there is no indication in the record that defendant, or any other party, has ever alleged that it was not in the best interests of Bianca, the parties' other child, to remain in plaintiff's custody. In spite of our recognition that this presents a difficult situation for all involved, we are confident that both parents will endeavor to make the transition as smooth as possible for Tiffany. We expressed similar concerns in *Gordon*, but there, as

here, we recognized our obligation to reverse the trial court's order in the interest of "the stability and order of our judicial system and, more important, the fundamental justice to the mother." (*Gordon*, 233 Ill. App. 3d at 665, 599 N.E.2d at 1183.) Defendant has available to him, if he desires, proper procedures to petition for Tiffany's custody.

In conclusion, based upon the foregoing, the trial court erred in entering the custody order and in denying plaintiff's petition to vacate the void order. Consequently, the trial court's custody order is vacated and custody of Tiffany must be returned to plaintiff.

Custody order vacated; custody reinstated in plaintiff.

DiVITO, P.J., and HARTMAN, J., concur.