*In re* ESTATE OF MADISON RAE POOLE, Deceased (Randy L. Poole, Jr., Petitioner-Appellant, v. Debra Jean Clausen, Adm'r of the Estate of Madison Rae Poole, Respondent-Appellee).

Third District   No. 3—00—0724

Opinion filed April 3, 2002.

HOLDRIDGE, J., specially concurring.

Louis E. Olivero (argued), of Louis E. Olivero & Associates, of Peru, for appellant.

Melissa K. Sims (argued), of Wimbiscus Law Firm, of Spring Valley, and Linn C. Goldsmith and Roger Bolin (argued), both of Boyle, Goldsmith, Shore & Bolin, of Hennepin, for appellee.

JUSTICE McDADE delivered the opinion of the court:

Randy Poole appeals from the trial court's denial of his petition to revoke letters of administration issued to Debra Jean Clausen. Randy is the acknowledged biological father of a viable fetus (later named Madison Rae Poole) being carried by Debra's daughter, Christina Clausen. Madison was ultimately stillborn as a result of an automobile accident in which Christina was killed. Randy petitioned to revoke the letters of administration following his receipt of notice that Debra had

sought leave of court to distribute the estate of Madison. Randy's petitions were ultimately denied because the trial court found that he was not an "eligible parent" under the statute governing inheritance from an illegitimate child and, therefore, lacked standing to challenge the issuance of letters of administration to Debra. Randy appeals.

## FACTS

Christina and Randy began living together in August of 1997. Shortly thereafter, the two moved to the State of Virginia. They continued to live together and maintain a conjugal relationship. In October of 1997, Christina became pregnant. The couple then returned to the State of Illinois, where they awaited the birth of their child.

Following their return to Illinois, Christina and Randy continued to live together but never married. They received emotional support from their respective families, participated in social events as a couple, and held out to their families and friends that Randy was the father of Christina's baby. Also during that time period, neither Christina's nor Randy's family disputed Randy's paternity of the developing fetus.

On May 26, 1998, when Christina was approximately eight months pregnant, she was involved in a head-on automobile collision. Her injuries were fatal, and she was pronounced dead at 7:33 a.m. A caesarean section was performed at 11:20 a.m., and a stillborn child was delivered. Although the child was pronounced dead at 11:20 a.m., Randy christened her Madison Rae Poole and took photographs with her at the hospital.

The Clausen family allegedly acknowledged Randy as the biological father of Madison. They invited him to participate in the selection of the baby's name (which included his surname) and agreed to listing Randy as the father on the fetal death certificate issued by the medical examiner. In addition, the obituary for Madison identified Randy as a survivor.

Debra filed a petition with the Putnam County circuit court for letters of administration for the estate of Madison on or about September 9, 1998. She had apparently been negotiating a settlement regarding the wrongful death of Madison, although she does not appear to have filed an action. Debra attached an affidavit of heirship to the petition, stating that she and John Clausen were the maternal grandparents of Madison and that they were the only persons entitled to administer her estate. Randy asserts that he was unaware at that time of any negotiations regarding Madison's wrongful death or of the petition filed by Debra.

On October 1, 1998, the circuit court of Putnam County entered an order appointing Debra administrator and directing that letters of

administration be issued to her for Madison's estate. On November 8, 1999, Debra filed a petition for an order allowing her to execute settlement documents and to distribute to heirs at law. According to the petition, Country Companies had agreed to pay $70,000 (minus expenses) to Madison's estate. Debra was seeking to have the settlement approved by the court and to distribute the settlement funds to John, herself, and Madison's two maternal aunts.

Randy received notice of the hearing on the petition filed by Debra. He responded by filing an affidavit of parentage, in which he explained his relationship with Christina and the circumstances of Madison's conception. Randy also filed a petition requesting revocation of Debra's letters of administration based on the fact that he, as Madison's biological father, had priority.

Debra filed an objection to Randy's petition to revoke her letters of administration. In her objection, she stated, in essence, that Randy was not an "eligible parent" under the statute governing inheritance from an illegitimate child. In addition, Debra alleged that the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 1998)) contained the exclusive method of establishing paternity and that Randy could not establish paternity pursuant to that act.

Eventually, Randy filed a second amended petition. (The original and first amended petitions were dismissed by the trial court due to insufficiency of the pleadings.) In the second amended petition, Randy contended that, if he were not an eligible parent, Christina could not be an eligible parent under that statute either. Therefore, the proceeds of Madison's estate would have to be distributed as though both parents had predeceased her. This petition was again denied, and Randy filed a motion to reconsider on July 6, 2000. The motion for reconsideration was denied, and Randy appeals.

## ISSUES

In his appeal, Randy has asked this court to determine: (1) whether the trial court erred in deciding that the father of an illegitimate, stillborn child has no interest, standing, or priority to request the removal of an administrator from the estate of his biological child; and (2) whether the statute governing inheritance from an illegitimate child is unconstitutional because it treats biological fathers of illegitimate children differently than biological mothers of those same children and, therefore, the trial court erred in finding that the biological father of an illegitimate child, as sole surviving heir, is not entitled to recover for the wrongful death of his child. Review of the trial court's order involves the construction of statutes, and therefore, the standard of review for this court is *de novo*. *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998).

## ANALYSIS

Randy argues that the trial court erred in determining that he had no interest, standing, or priority to request the removal of Debra as administrator of Madison's estate. He claims that he has both status and priority as Madison's biological father and nearest kin. Debra has countered by arguing that, since Randy is not an "eligible parent" under the statute governing inheritance from an illegitimate child, he similarly lacks the status to be an administrator of the estate. Both of these issues assume the existence of an estate.[1]

### Rights of the Father of an Illegitimate, Stillborn Child

■ Randy argues that the trial court erred in determining that he had no interest, standing, or priority to request the removal of Debra as administrator of Madison's estate in this case. First, Randy argues that he has a statutory priority in the granting of letters of administration under section 9—3 of the Probate Act of 1975 (755 ILCS 5/9—3 (West 1998)), which provides in pertinent part:

"Persons entitled to preference in obtaining letters. The follow-

---

[1]Based on the briefs, it appears that Country Companies issued a settlement check payable to the estate of Madison Rae Poole as a result of settlement negotiations with Debra, without a claim actually having been filed. The parties, at the request of the court, filed supplemental briefs on the issue of a viable fetus's ability to have an estate. They argued that an estate for Madison was created under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2000)) (Wrongful Death Act).

The Wrongful Death Act allows for the creation of an estate on behalf of a *deceased person* after an action has been filed and either a settlement or judgment has been reached. In this case, we have neither a deceased person nor an action filed.

This court is familiar with the case law which allows a parent to file a cause of action for the wrongful death of a viable fetus (which is discussed later in this opinion). In such cases, an estate may conceivably be necessary for purposes of distributing the money awarded under such a cause of action. However, we are not aware of any statutory or common law which either authorizes such a wrongful death action by a grandparent or allows for the creation of an estate for a viable fetus to distribute money paid as a result of negotiations regarding such a claim. Therefore, no estate can be said to have been created by action of law.

Nonetheless, it appears that, as a result of just such negotiations, a check has been issued payable to the estate of Madison Rae Poole. Therefore, we are faced, as a practical matter, with the issues raised by the parties regarding who is entitled to administer the estate and who is entitled to share in its distribution.

ing persons are entitled to preference in the following order in obtaining the issuance of letters of administration ***:

* * *

(e) The parents or any person nominated by them.
***

(g) The nearest kindred or any person nominated by them.

* * *

Only a person qualified to act as administrator under this Act may nominate *** in accordance with the order of preference set forth in this Section. A person who has been removed as representative under this Act loses the right to name a successor." 755 ILCS 5/9—3 (West 1998).

By the plain language of this statute, it would appear that a biological parent (subsection e) would have a preference over a grandparent (subsection g) for letters of administration. The original question before the trial court was whether Randy should have had priority over Debra for letters of administration of the estate of Madison. Based on the unambiguous statutory language, it certainly appears that Randy's petition for revocation of the letters of administration should have been granted.

However, Debra has argued that Randy is not an eligible parent under a different section of the Probate Act which governs inheritance from illegitimate children. Therefore, she contends he lacks standing to object to her appointment as administrator because he is not a parent as that term is used in the statute. She cites no authority for her personal conclusion that, because the biological father of an illegitimate child cannot inherit, he is also precluded from serving as administrator.

■ Section 2—2 of the Probate Act of 1975 (755 ILCS 5/2—2 (West 1998)) is the statute governing inheritance from illegitimate children, and it provides as follows:

"Illegitimates. The intestate real and personal estate of a *resident* decedent who was illegitimate at the time of death and the intestate real estate in this State of a *nonresident decedent* who was illegitimate at the time of death, after all just claims against his estate are fully paid, descends and shall be distributed as provided in section 2—1, subject to section 2—6.5 of this Act, if both parents are eligible parents. *As used in this Section,* 'eligible parent' means a parent of the decedent who, *during the decedent's lifetime,* acknowledged the decedent as the parent's child, established a parental relationship with the decedent, and supported the decedent as the parent's child. ***

If neither parent is an eligible parent, the intestate real and

personal estate of a resident decedent who was illegitimate at the time of death and the intestate real estate in this State of a nonresident decedent who was illegitimate at the time of death, after all just claims against his or her estate are fully paid, descends and shall be distributed as provided in section 2—1, but the parents of the decedent shall be treated as having predeceased the decedent." (Emphasis added.) 755 ILCS 5/2—2 (West 1998).

Debra argues that under the plain language of this provision, Randy is not an eligible parent because Madison, the decedent, did not have a lifetime so Randy could not acknowledge the decedent as his child, establish a parental relationship with the child, or support the decedent as his child during her lifetime. Although the statute requires a "lifetime" of the child for the establishment of eligibility by *both* parents, Debra insists that Christina could inherit from the estate of Madison because a biological mother is naturally the mother of the unborn fetus and therefore satisfies the statutory requirements. She must, of necessity, be arguing that Madison had a "lifetime" *in utero*.

■ We note first that the language limits the definition of "eligible parent" to the particular section of the Act. We also believe that Debra's analysis is flawed under the plain language of the statute.

We start with the fact that the legislature specifically redrafted the statute (see the next part of this opinion) to make it gender neutral. By statutory design, if the mother can qualify as an eligible parent, a biological father could also qualify, despite the fact that he is not married to the mother. Certainly, the biological father could acknowledge the fetus as his child during the term of the pregnancy. In addition, he could establish a relationship with the child's mother and support the child by supporting the mother.

In this case, it appears that Randy could qualify as an eligible parent. He resided with Christina before and throughout the pregnancy, including moving with her to another state. He provided support (financial and emotional) to her and, through her, to the unborn child, and he held himself out as the father of the child. Randy did everything possible to act as a parent to the unborn child. Any analysis which results in finding, based on these facts, that Christina was an eligible parent and Randy was not would necessarily lead to the conclusion that the statute is gender biased, which is something the legislature specifically redrafted it to avoid.

Debra has also argued that Randy was only a potential father because Madison had not yet been born at the time of her death. Therefore, he did not have the requisite parental relationship to give him priority under the statute, because he had no right to impede the exercise of the mother's choice to terminate the pregnancy prior to

birth. Debra cited *Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973), and *Coe v. County of Cook*, 162 F.3d 491 (7th Cir. 1998), in support of her argument. Those cases dealt with the issue of abortion and are easily distinguished from this litigation. Neither *Roe* nor *Coe* dealt with the rights of a biological father to inherit from a viable fetus.

More pertinent to the issues in this appeal, in *Seef v. Sutkus*, 145 Ill. 2d 336, 583 N.E.2d 510 (1991), the Illinois Supreme Court held that under the Wrongful Death Act, an unborn fetus was recognized as a person to the extent that a rebuttable presumption for loss of society existed for the parents of a stillborn child. The court recognized that Illinois law has acknowledged that pecuniary losses encompass loss-of-society damages for many facets of family relationships. The court, citing *Chrisafogeorgis v. Brandenberg*, 55 Ill. 2d 368, 304 N.E.2d 88 (1973), found that the Wrongful Death Act gave parents the right to maintain an action for damages for the negligently caused death of a viable fetus. The court did not make any distinction in either case between married and unmarried parents.

No such action was filed by any party in this case. However, by a fair reading of *Seef* and *Chrisafogeorgis*, a biological father of an illegitimate viable fetus would have a redressible claim as a result of the wrongful death of that fetus. In this case, Christina was involved in a head-on collision that was not, based on the information before this court, any fault of her own. Therefore, Randy could have brought a Wrongful Death Act claim for the death of Madison in this case. We note for the record that we have found no case law which gives such a right of action to grandparents such as Debra and John Clausen.

If Randy had a legitimate wrongful death claim, it would appear that he, rather than the grandmother, would have priority for letters of administration for any estate created by advancing that claim. The legitimacy of any such claim would, however, be dependent upon his ability to prove that he was the biological father of Madison. Randy indicated in his brief that he could prove paternity, but it does not appear that an evidentiary hearing was held on this matter—perhaps because paternity has not been challenged. Therefore, the case must be remanded to the trial court for an evidentiary hearing limited to determining whether Randy is Madison's biological father. If he is, the letters of administration should properly issue to him and not to Debra. Because the "fund" derives from a settlement of a nonlitigated claim and not from a judgment, we make no finding as to its appropriate distribution.

### Section 2—2 is Gender Neutral and Constitutional

Randy argued that section 2—2 of the Probate Act of 1975 (755

ILCS 5/2—2 (West 1998)) is unconstitutional because it treats biological fathers differently than biological mothers. Although we have already touched on this issue in arriving at our decision on the earlier question, we have decided, in the interest of judicial economy, to address it in greater depth to provide some direction with regard to who would be eligible to inherit from Madison's "estate."

An earlier version of section 2—2 of the Probate Act of 1975 (755 ILCS 5/2—2 (West 1998)), providing that a biological father of an illegitimate child could not inherit, was reviewed by the Illinois Supreme Court in *In re Estate of Hicks*, 174 Ill. 2d 433, 675 N.E.2d 89 (1996). In *Hicks*, the court held that the statute allowing only the mother and the mother's descendents to inherit from an illegitimate intestate who dies without a surviving spouse discriminated on the basis of gender and resulted in a denial of equal protection under the state constitution. *Hicks*, 174 Ill. 2d 433, 675 N.E.2d 89.

As a result of the *Hicks* decision, the Illinois legislature amended the statute to the current form quoted above. From the legislative history surrounding that revision, it is clear that the legislature was attempting to create a statute that was gender neutral.

On its face, the statute seems to have succeeded in achieving gender neutrality. However, it does not appear to be applicable to the situation presented before this court. Certainly, the statute clearly governs situations where the illegitimate child has actually been born and lived for a period of time. We have been unable to locate any statutory or common law governing inheritance from a viable fetus that is stillborn, nor have the parties cited any such authority. Therefore, we are reduced to construing this statute as if it covered the situation presented.

■ In this case, it seems clear that neither parent can meet the criterion of "during the decedent's lifetime." However, a biological father could acknowledge the viable fetus as his own, establish a relationship with it, and support the fetus through his support of the mother. Conceptually, if the biological father has done these things, he would be as eligible as the mother to inherit from an illegitimate viable fetus.

As we have previously discussed, Randy appears to meet the other criteria. He resided with Christina in both Illinois and Virginia before and during the pregnancy, he provided support (financial and emotional) to her, and he held himself out as the father of the child. Indeed, both of them did. In addition, the maternal grandparents allegedly did not dispute his paternity prior to the accident. Randy was present when Madison was stillborn, he helped name her, he was present when she was christened, and he is identified as the biological

father on the fetal death certificate. All of these facts reasonably lead to the conclusion that Randy did indeed do everything he could to establish a relationship with Madison. If the statute applied at all in this case, we believe it would apply equally to Randy and Christina. We do not find the statute to be unconstitutional on the grounds of gender bias.

## CONCLUSION

Based on the foregoing, the trial court erred in denying Randy's second amended petition to revoke the letters of administration. Therefore, the trial court's decision is reversed, and the case is remanded for a hearing with regard to whether Randy was the biological father of Madison. Once that determination is made, the court can then make a ruling consistent with this order regarding who is entitled to be issued the letters of administration for Madison's "estate" and to determine the distribution of the settlement funds.

Reversed and remanded.

BRESLIN, J., concurs.

JUSTICE HOLDRIDGE, specially concurring:
I concur in the conclusion reached by the majority.[2]

---

[2]The issue of a viable fetus's ability to have an estate was never before this court. The majority, over my dissent, issued an order requesting the parties brief the issue. It was my position that this court did not need to address the issue in order to rule upon the issues preserved for appeal. My position has not changed. Were the issue properly before this court, I believe a strong argument could be made that the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2000)) necessarily includes a viable fetus as a person for whom an estate may be established.