**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 2002-CA-02094-SCT**

*DERRICK WILLIAMS*

*v.*

*LISA N. FARMER*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/2002 |
| TRIAL JUDGE: | HON. KENNIE E. MIDDLETON |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL ELIAS WINFIELD |
| ATTORNEYS FOR APPELLEE: | OMAR LAMONT NELSON |
| | DENNIS C. SWEET, III |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This is a case in which a father seeks to recover half the proceeds paid in settlement of the claim for the wrongful death of his illegitimate daughter.  Our decision is controlled by statute, which precludes recovery by the father for the death of his illegitimate child.

¶2.     On February 14, 1996, Derrick Williams filed a complaint against Lisa N. Farmer, seeking to establish himself as an heir of Lisa's unborn daughter, Asiah Farmer.  Williams claimed he was entitled to one-half of the funds Farmer received from the wrongful death of Asiah, his illegitimate unborn child.  On November 25, 2002, the chancellor entered an order ruling that Williams and his kindred could not inherit

from Asiah because Williams had failed to openly treat Asiah as his child and had refused or neglected to provide support. From this order, Williams appealed and upon consideration, we affirm.

## STATEMENT OF FACTS

¶3. In 1993, Farmer and Williams had intimate relations resulting in Farmer becoming pregnant. Farmer contacted Williams to inform him that she was pregnant. Farmer alleges Williams refused to have contact with her or acknowledge that he was the father of their unborn child, Asiah.

¶4. In December 1993, Farmer was involved in an automobile accident with Tommy McAlpin, while he was working for Thames Motor Company. Subsequent to the accident, Asiah died *in utero* and the death certificate was dated January 16, 1994.

¶5. In June 1994, Farmer filed suit against Thames Motor Company, McAlpin and others for the injuries Farmer sustained and for the wrongful death of Asiah. Farmer settled her individual claim against said defendants for $150,000.00 and the claim for the wrongful death of Asiah for $150,000.00.

¶6. Farmer never informed Williams of said claim until documents pertaining to the release of the claim required his signature. Williams signed a release for the purpose of Farmer settling the wrongful death claims against the defendants. At some point, Williams changed his mind and on February 14, 1996, Williams filed suit against Farmer for one-half of the settlement proceeds and on March 11, 1996, a motion to join Christopher and Eric Davis, Williams's children was filed.

## ANALYSIS

¶7. The only issues presented to this Court are (1) whether the requirements of Miss. Code Ann. § 91-1-15(3)(d)(i) apply in circumstances where the illegitimate child is a fetus; and (2) whether Farmer should be equitably estopped from asserting Williams and his kindred are not wrongful death beneficiaries of Asiah Farmer. Because the first issue is dispositive of the case, we will not address the second.

¶8.     The trial court applied Mississippi Code Ann. § 91-1-15 (Rev.1994), which addresses the questions presented to us:

> (3)   An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the *natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:*
>
> * * *
>
> (d) The **natural father of an illegitimate and his kindred shall not inherit**:
>> (i) **From and through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child.**

(Emphasis added).

### a.     WHETHER SECTION 91-1-15(3)(D)(i) OF THE MISSISSIPPI CODE IS APPLICABLE IN CIRCUMSTANCES WHERE THE ILLEGITIMATE CHILD IS A FETUS.

¶9.     Williams argues that applying § 91-1-15(3)(d)(i) is in direct contravention of the legislative intent in creating Miss. Code Ann. § 11-7-13. (2003) which states in pertinent part:

> if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death. . . . The provisions of this section shall apply to illegitimate children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, *if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.*

(Emphasis added).

¶10.     This Court has held that "in construing statutes, all statutes *in pari materia* are taken into consideration and the legislative intent is deduced from the consideration as a whole" ***Wilbourn v. Hobson***, 608 So. 2d 1187, 1200 (Miss. 1992) (citing ***Allgood v. Bradford***, 473 So. 2d 402, 411

3

(Miss. 1985)). It is clear from Miss. Code Ann. § 11-7-13 that in order for a father to be entitled to proceeds from a wrongful death action for an illegitimate child, he must establish his right to inherit from the child under Miss. Code Ann. § 91-1-15, which includes the § 91-1-15(3)(d)(i) requirements. Therefore, Williams's argument is without merit.

¶11.    In *66 Federal Credit Union v. Tucker* 853 So. 2d 104 (Miss. 2003), this Court held that Mississippi's wrongful death statute created a cause of action for the death of a fetus who is "quick" in the womb. *Id.* at 112.[1] The question before us now is whether Williams is required to comply with the requirements of Miss. Code Ann. § 91-1-15(3)(d)(i) in order to share in the settlement proceeds from the wrongful death claim of Asiah.

¶12.    Williams contends that it is virtually impossible to comply with the requirements of the statute where the decedent is a fetus. He contends the he was never "afforded the opportunity to take Asiah to the zoo or to the park as she never had the benefit of breathing her first breath." He further claims that he happily agreed that Asiah was his child, and even offered financial assistance during the maternity stage, but was refused. Williams also states he was discouraged from visiting Farmer by threat from her family members. However, there is no evidence in the record that substantiates these allegations.

¶13.    Citing *Bullock v. Thomas*, 659 So. 2d 574, 576 (Miss. 1995), Farmer correctly contends that Williams has the burden of demonstrating he openly treated the child as his own and did not refuse or neglect to support her. Farmer further contends that the overwhelming and credible evidence of William's lack of involvement or interest in Asiah demonstrates his refusal and neglect to support his child.

---

[1]The legislature, in the 2004 regular session, passed House Bill 352 amending § 11-7-13 to include the death of an unborn quick child in the wrongful death statute.

¶14.     The trial court found that, although Williams was the natural father of Asiah, that alone does not automatically entitle him or his children to inherit from her. The trial court, citing *Estate of Patterson v. Patterson*, 798 So. 2d 347, 350 (Miss. 2001), and *Bullock v. Thomas*, 659 So. 2d 574, 577 (Miss. 1995), stated that Williams' total lack of concern and indifference demonstrated his refusal and neglect to support the child. The trial court properly concluded that Williams and his children could not inherit from or through Asiah.

¶15.     Williams argues that the cases the trial court used in support of its judgment are easily distinguished from the case sub judice. Therefore, a brief look at *Estate of Patterson v. Patterson*, 798 So. 2d 347, 350 (Miss. 2001) and *Bullock v. Thomas*, 659 So. 2d 574, 577 (Miss. 1995) is warranted.

¶16.     In *Patterson*, an action was brought by a father to inherit from his illegitimate, three- year old son who died in an automobile accident. This Court held that Miss. Code Ann. § 11-7-13 clearly provides for inheritance from illegitimates, but that the right is tied to Miss. Code Ann. § 91-1-15(3)(d)(i). *Patterson*, 798 So. 2d at 349. The father was not aware when his son was born because he did not communicate with the mother after she informed him that she was pregnant. *Id.* at 348. The father never provided support for the birth or medical expenses, food or clothing nor did he contribute toward his son's funeral expenses. *Id.* This Court concluded that "[t]his case is a classic example of conduct the statutes and case law seek to prevent. A father should not be allowed to receive a windfall simply because he impregnated the child's mother. [The father] refused to openly treat his son [] as his own or to comply with his duty to provide essential support, until it appeared he might receive a sizable inheritance." *Id.* at 351.

¶17.     In *Bullock*, it was determined that Bullock was the father but he failed to prove he openly treated the deceased as his child. *Bullock*, 659 So. 2d at 575. It was determined "that Bullock's time with the

5

child was attributable to his desire to be with [the mother], more so than his desire to be with [the child] himself" and that was evident in that the mother "was almost always present during the times that [the child] and Bullock saw one another." *Id.* at 577. Also, this Court found instructive the fact that Bullock did not attend the child's funeral. *Id.* This Court held that, even though Bullock proved that he did not refuse or neglect to support the child, he failed to demonstrate that he openly treated the child as his own and therefore was denied the right to inherit.

¶18. Williams argues that these cases are distinguishable from the case sub judice in that neither case dealt with the issue of an illegitimate unborn child.

¶19. This is a case of first impression. Well-settled principles of statutory interpretation require us to ascertain the legislative intent from the language of the act and to discern and give effect to that intent. *City of Natchez, Miss. v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992).

¶20. It is clear from the language of the statute that fathers are entitled to inherit from their illegitimate children upon showing that the father openly treated the child as his own and has not refused or neglected to support the child. The statute clearly governs situations where the illegitimate child has actually been born and lived for a period of time. However, Williams argues that it is impossible to meet these requirements when the child is an unborn child.

¶21. The Appellate Court of Illinois has addressed this issue in the case of *In re Estate of Poole* 767 N.E.2d 855 (Ill. App. Ct. 2002), *aff'd*, 799 N.E.2d 250 (Ill. 2003). There, the issue before the court was whether a father of a stillborn fetus was entitled to letters of administration of estate in preference to the maternal grandmother. The grandmother alleged the father was not an "eligible parent" under a statute governing inheritance from an illegitimate child. 767 N.E.2d at 859.

6

¶22. The Illinois court has addressed the issue of whether the father was an eligible parent and was entitled to inherit from his illegitimate child who died *in utero*. The Illinois statute in issue states: "As used in this section, 'eligible parent' means a parent of the decedent who, during the decedent's lifetime, *acknowledged the decedent as the parent's child,* established a parental relationship with the decedent, and *supported the decedent as the parent's child*." ***Id.*** (emphasis added). The grandmother argued that the father was not an "eligible parent" because the decedent did not have a lifetime so the father could not have acknowledged the decedent as his child, develop a relationship or support the decedent as his child. ***Id.*** at 859-60. The court stated: "Certainly, the biological father could acknowledge the fetus as his child during the term of the pregnancy. ***Id.*** at 860. The court further concluded that

> a biological father could acknowledge the viable fetus as his own, establish a relationship with it, and support the fetus through his support of the mother. Conceptually, if the biological father has done these things, he would be as eligible as the mother to inherit from an illegitimate viable fetus.

***Id.*** at 862. The court observed that it appeared the father could qualify as an eligible parent because he resided with the mother before and throughout the pregnancy, provided her with financial and emotional support, and through her, to the unborn child and he held himself out as the father of the unborn child. ***Id.*** at 860.

¶23. The requirements of an eligible parent under the Illinois statute are similar to the requirements under Miss. Code Ann. § 91-1-15(3)(d)(i). The Illinois statute requires a parent to acknowledge the decedent as the parent's child, establish a parental relationship with the decedent and support the decedent as the parent's child. Similarly, in order for a father to inherit from an illegitimate child in Mississippi the father must demonstrate that he openly treated the child as his own and that he did not refuse or neglect to support the child.

7

¶24.    It strikes us as inescapable logic that, since this Court, in *66 Federal Credit Union*, established that there is a wrongful death claim for an unborn child, then the requirements of Miss. Code Ann. § 91-1-15(3)(d)(i) should apply under the circumstances.

¶25.    This Court has held that the standard of review "in ruling on a chancellor's determination on the issue of whether a father has openly treated an illegitimate child as his own 'may only be treated as a finding of fact . . . .'" *Patterson*, 798 So. 2d at 349 (citation omitted). "This finding will only be reversed if manifestly erroneous or unsupported by substantial evidence in the record." *Id.*

¶26.    In the case sub judice, it is uncontested that Williams is the father of Asiah. The trial court found that Williams knew that Farmer was pregnant with his child. Williams had no contact with Farmer from 1993 until 1995. Williams did not contribute any support, financial or otherwise to Farmer during her pregnancy or thereafter. Williams did not seek to be present for her birth. Williams did not know of the death of Asiah for approximately two years because he made no effort to be a father to her. The trial court concluded that "under the facts of this case, it cannot be said that Williams suffered any loss as the result of the demise of Asiah. Any part of the settlement for the death of Asiah received by Williams and his kindred could only be termed a windfall and unjust enrichment."

¶27.    We find the determination by the trial court to be exactly correct.

## CONCLUSION

¶28.    The wrongful death statute creates a cause of action for the death of a fetus who is "quick" in the womb. This Court finds that Miss. Code Ann. § 91-1-15(3)(d)(i) is applicable in circumstances where the wrongful death claim is for the death of an unborn child, and the trial court's order is affirmed.

¶29.    **AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES AND RANDOLPH, JJ., CONCUR.   DIAZ, J., NOT PARTICIPATING**.