(No. 93872.—

*In re* ESTATE OF MADISON RAE POOLE (Randy L. Poole, Appellee, v. Debra Jean Clausen, Adm'r, Appellant).

*Opinion filed October 17, 2003.*

Melissa K. Sims, of the Wimbiscus Law Firm, of Spring Valley, for appellant.

Louis E. Olivero & Associates, of Peru, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

This appeal arises from a decision of the circuit court of Putnam County denying petitioner Randy L. Poole's petition to revoke letters of administration issued to respondent, Debra Jean Clausen. The appellate court reversed the circuit court's order and remanded the cause for a hearing. 328 Ill. App. 3d 964. We granted Clausen's petition for leave to appeal (177 Ill. 2d R. 315) and now affirm the judgment of the appellate court.

## BACKGROUND

In 1997, Poole began living with Christina Kay Clausen, the daughter of respondent Clausen. Poole and Christina subsequently moved to Virginia, where they

maintained a conjugal relationship. In October 1997, Christina became pregnant. During the early months of the pregnancy, the couple returned to Illinois, where they continued to live together. The couple did not marry.

On May 26, 1998, when Christina was approximately eight months pregnant, she was involved in an automobile accident and sustained fatal injuries.[1] Doctors later performed a Caesarean section operation and delivered a stillborn fetus, who was named Madison Rae Poole. There is no dispute in this case that the fetus did survive Christina.

On September 11, 1998, Clausen filed a petition for letters of administration in the circuit court of Putnam County for the estate of Madison Rae Poole. The court issued letters of administration to Clausen on October 1, 1998. On that same date, the circuit court also entered an order declaring heirship, identifying as Madison's heirs Clausen (maternal grandmother), Jon Robert Clausen (maternal grandfather), Elizabeth Clausen (maternal aunt), and Theresa Clausen (maternal aunt). The court later amended the order to show that the only heirs at law were the maternal grandparents.

At some point during the administration of the estate, and the record is unclear on this point, a claim for uninsured-motorist benefits was registered with the

---

[1]The record is unclear as to the details surrounding this accident. At various points, the accident is described as having been a single-car accident. Clausen, in her appellate brief submitted to this court, refers to Christina being involved in an automobile accident "by an uninsured automobile driver." This is consistent with her statement of facts contained in the supplemental brief she filed in the appellate court pursuant to that court's order. In that brief, Clausen referred to a "Joshua Bird" as being the other driver involved in Christina's accident and gave a citation to a page in the record in support of that fact. However, there is no reference to "Joshua Bird" or any other vehicle at the page in the record identified by Clausen. Poole's statement of facts does not contain any details of the accident whatsoever.

insurer of the car Christina was driving at the time of the accident, Country Companies Mutual Insurance Company.[2] The matter apparently was settled without resort to litigation. On November 8, 1999, Clausen sought court approval to execute the settlement and to distribute the proceeds to the heirs at law. The proceeds of the settlement were listed as $66,975.50.

Poole thereafter filed a "Petition to Revoke Letters of Administration" on November 19, 1999. In the petition, Poole asserted that he was Madison Rae Poole's natural father and, as such, was entitled to priority in the granting of letters of administration. Poole requested that the court revoke the letters of administration previously granted to Clausen. Poole attached to the petition an "affidavit of parenthood" in which he swore that he and Christina had lived together since August 17, 1997, and that Christina became pregnant with his child in October 1997. Poole also averred that at all times after the conception, he acknowledged that he was the father of Christina's unborn child and that he "contributed to the support, maintenance, and comfort" of Christina. He swore that the couple lived together as a family unit and

---

[2]The record makes clear that no wrongful-death action was ever filed with respect to the automobile accident at issue in this case. It appears from the record that Christina was driving an automobile insured by her father, Jon Clausen. At various hearings held in the circuit court, the insurer's representative identified himself as Jon Clausen's insurer. However, in the statement of facts contained in her supplemental appellate court brief, Clausen stated that the car was owned and insured by Christina. The statements of fact contained in the briefs submitted in this court do not refer to the car's owner in any way. The pleadings filed by the parties in the circuit court do not provide illumination on this point. On the current state of the record, all we can say with certainty is that the insurer made two payments consistent with the limits of liability contained in the policy covering the car. One payment was made with respect to Christina, and the second was made with respect to Christina's child.

that the couple's friends and family acknowledged that the couple were expecting a child. Poole noted that the May 26, 1998, automobile accident claimed the life of Christina and resulted in the death of his unborn child. On June 29, 1998, a "certificate of fetal death" was issued by the local registrar, in which Poole was listed as the father of the stillborn fetus, whose name was listed as Madison Rae Poole. A copy of the certificate was also attached to Poole's petition.

The circuit court subsequently dismissed Poole's petition with leave to amend due to lack of standing. Poole later filed an amended petition. In this petition, Poole reasserted the factual allegations from his previous pleading, but added that he was, pursuant to section 2—2 of the Probate Act of 1975 (755 ILCS 5/2—2 (West 1998)), the sole surviving "eligible parent" of Madison Rae Poole and that, as such, he had standing in the matter and was entitled to priority over Clausen in the granting of letters of administration. Poole requested that Clausen's letters of administration be revoked and that he be appointed the administrator of the estate.

The circuit court denied Poole's petition, ruling that Poole failed to satisfy the statutory requirements of an eligible parent under section 2—2 of the Probate Act. Because he lacked standing in the matter, the court denied Poole's petition to revoke the letters of administration of Clausen and to appoint Poole as administrator. Poole thereafter filed a motion challenging the constitutionality of section 2—2. The circuit court denied the motion, upholding the statute's constitutionality, and Poole appealed.

The appellate court reversed the circuit court's order and remanded the cause for a hearing. The appellate court noted that under the plain language of section 9—3 of the Probate Act, a biological parent has precedence over a grandparent for letters of administration. 328 Ill.

App. 3d at 969. Based on this statutory language, the appellate court stated that "it certainly appears that [Poole's] petition for revocation of the letters of administration should have been granted." 328 Ill. App. 3d at 969. However, the appellate court noted that Clausen had argued that Poole was not an eligible parent under section 2—2 of the Probate Act. 328 Ill. App. 3d at 969. She objected that Poole lacked standing to object to her appointment as administrator because he is not a "parent" as that term is used in the statute. The court disagreed with Clausen's contentions for two reasons. The court first observed that "the language [of section 2—2] limits the definition of 'eligible parent' to the particular section of the Act." 328 Ill. App. 3d at 970. The court then pointed out that section 2—2 had been recently redrafted by the legislature to make it gender-neutral in accordance with this court's decision in *In re Estate of Hicks*, 174 Ill. 2d 433 (1996). The appellate court reasoned that if a mother can qualify as an "eligible parent" under the statute, then so too should a biological father even if he is not married to the mother. 328 Ill. App. 3d at 970. After reviewing the plain language of the statute, its legislative history and the facts of the case, the appellate court concluded that "it appears that [Poole] could qualify as an eligible parent" under the Probate Act. 328 Ill. App. 3d at 970.

The appellate court also pointed out that it believed that the Wrongful Death Act was pertinent to the issues in this case. 328 Ill. App. 3d at 971. The court noted that in Illinois, under the Wrongful Death Act, an unborn fetus is recognized as a person to the extent that a rebuttable presumption for loss of society existed for the parents of a stillborn child. 328 Ill. App. 3d at 971. The court acknowledged that no such wrongful-death action was filed in this case, but nevertheless concluded that Poole could have brought such a claim for the death of

Madison. Moreover, "[i]f [Poole] had a legitimate wrongful death claim, it would appear that he, rather than the grandmother, would have priority for letters of administration for any estate created by advancing that claim." 328 Ill. App. 3d at 971. Recognizing that the legitimacy of such a claim is dependent upon Poole's ability to prove that he was Madison's biological father, the court remanded the matter to the circuit court for a hearing. 328 Ill. App. 3d at 971. In so holding, the appellate court noted that section 2—2 of the Probate Act was constitutional in that it was gender-neutral. 328 Ill. App. 3d at 971-72.

## ANALYSIS

As an initial matter, we note that our resolution of this case has been hampered by the state of the record. At times, it appears Christina was involved in a single-car accident. At other times, the record suggests that the accident involved multiple vehicles. Although it appears reasonably clear that an insurance settlement was reached between the Clausens and the insurer pursuant to an uninsured-motorist policy, the current status of these funds is not readily ascertainable. The settlement apparently was reached without resort to the filing of any wrongful-death actions and, as a result, no estates for either Christina or Madison were created under our Wrongful Death Act. See 740 ILCS 180/2 (West 1998). We questioned both parties at oral argument regarding the origin of these funds. No satisfactory answer has been provided by either counsel. All we can be certain of is the fact that a check was issued from the insurer with respect to the death of Madison Rae Poole. Moreover, we note that this same lack of information concerned the appellate court, which ordered the parties to brief the issue of whether a viable fetus has the ability to have a probate estate. The appellate court, however, did not address this issue in its opinion, but rather, as we have pointed out,

noted the applicability of the Wrongful Death Act to the facts of the case.

We conclude, from the limited record in this matter, that the probate estate at issue in this case was opened as a means to distribute the proceeds from the insurance payout following the accident. Moreover, it appears to us that the insurance proceeds paid out in this matter were in the nature of wrongful-death proceeds. We therefore believe it was correct for a probate estate to be created under these circumstances. Illinois law allows for "damages where the nearly full-term child dies before birth" under the Wrongful Death Act. See *f v. Sutkus*, 145 Ill. 2d 336, 339 (1991). Not all wrongful-death cases, however, result in a filing of an action under the Wrongful Death Act, and not all claims need be pursued by an administrator appointed solely under that act. See 740 ILCS 180/2.1 (West 1998) (stating that if the only asset in a deceased's estate is a cause of action for wrongful death "and no petition for letters of office for his or her estate has been filed," the court upon motion of any person who would be entitled to a recovery under the Wrongful Death Act "without opening of an estate" may appoint a special administrator for the deceased party). However, once a probate estate has been opened, a special administrator may not be appointed under the Wrongful Death Act. See *Kubian v. Alexian Brothers Medical Center*, 272 Ill. App. 3d 246 (1995). The circuit court, under the Probate Act, then has the power to approve the distribution of any settlement that becomes an asset of the decedent's estate. See *In re Estate of Redeker*, 210 Ill. App. 3d 769 (1991).

The circuit court here appointed Clausen administrator, under the Probate Act, for purposes of distribution of the proceeds of the settlement in October 1998. At that time, the estate contained over $60,000 in proceeds. Pursuant to the Probate Act, Clausen gave notice to all potential claimants to Madison's estate. One year later,

Poole appeared in the action to contest the issuance of letters to Clausen and to have himself declared Madison's sole heir at law. We, therefore, will look to the Probate Act in order to resolve the issues before us.[3]

The question we must answer in this case, and the sole question that was raised by Poole in his petition for revocation of letters, is relatively a straightforward one: Who has legal precedence to act as the administrator in this estate? Because this question involves the construction of statutes, we review the circuit court's determination *de novo. Woods v. Cole*, 181 Ill. 2d 512, 516 (1998).

Section 9—3 of the Probate Act provides a list of persons entitled to preference in obtaining letters. 755 ILCS 5/9—3 (West 1998). The Probate Act follows the general rule that prefers surviving spouses and descendants over anteceding relatives. Madison, of course, has no surviving spouse or descendants. If, as in this case, no surviving spouse or descendants exist, subsection (e) provides that "the parents" shall act as administrator. 755 ILCS 5/9—3(e) (West 1998). Subsection (f) then lists brothers and sisters (755 ILCS 5/9—3(f) (West 1998)), and subsection (g) lists "nearest kindred" in descending order of preference (755 ILCS 5/9—3(g) (West 1998)).

Clausen maintains that she, as grandmother, has preference over Poole because Poole cannot establish paternity under Illinois law. Moreover, the parties

---

[3]We point out, that even if this case had proceeded under the Wrongful Death Act, the Probate Act would necessarily have been implicated. The Wrongful Death Act awards compensation to the "next of kin" of a decedent. "Next of kin" are those blood relatives of the decedent who are in existence at the time of the decedent's death who take the decedent's property if the decedent had died intestate. See *Johnson v. Provena St. Therese Medical Center*, 334 Ill. App. 3d 581, 591 (2002). The rules of intestate succession are governed by our Probate Act. See 755 ILCS 5/2—1 (West 1998). The acts therefore share a mutuality of purpose that we take into account in deciding this matter.

disagree over how the term "parent" as used in section 9—3 should be defined. Poole points to section 2—2 of the Probate Act, which controls the distribution of an intestate illegitimate's estate and argues the statute allows parents to inherit from an illegitimate person, just as parents may inherit from a legitimate person, if the illegitimate's parents are "eligible." 755 ILCS 5/2—2 (West 1998). Section 2—2 states:

> "As used in this Section, 'eligible parent' means a parent of the decedent who, during the decedent's lifetime, acknowledged the decedent as the parent's child, established a parental relationship with the decedent, and supported the decedent as the parent's child." 755 ILCS 5/2—2 (West 1998).

According to Poole, he can also serve as administrator under section 9—3 because he satisfies the definition of an "eligible parent" for purposes of inheritance under section 2—2.

The problems with Poole's argument, however, are twofold. First, it is not at all clear that the term "parent," as it is used in section 9—3, is interchangeable with the term "eligible parent," as it is used in section 2—2. In interpreting statutes, this court must ascertain and give effect to the intent of the legislature when it enacted the statute. We have long recognized that it is the language of the statute itself which provides the best indication of the drafter's intent. *Kirwan v. Welch*, 133 Ill. 2d 163, 165 (1989). It is important to stress that the General Assembly limited the term "eligible parent" to section 2—2 alone. If the legislature would have intended the term "eligible parent" to be used throughout the Probate Act, it would have included it within the definition sections of the Act. See 755 ILCS 5/1—2 through 1—2.24 (West 1998) (defining terms used in the Probate Act). We know of no rule of construction that allows a court to declare that the legislature did not mean what the plain language of a statute imports. See *Cardwell v.*

*Rockford Memorial Hospital*, 136 Ill. 2d 271, 278 (1990). In our view, there is simply no indication that the legislature intended for the term "eligible parent" to be used outside of section 2—2. For that reason, the use of the term is limited to establishing whether the parents of an illegitimate child can inherit from that child upon his or her death. We will not presume another use for the term in the absence of legislative intention. Therefore, section 2—2 is of no relevance in determining whether Poole is a "parent" within the meaning of section 9—3 such that he takes precedence over Clausen for purposes of administering the estate of Madison Rae Poole.

Second and more importantly, the term "eligible parent" presupposes parental relationship between the child and the parent. In other words, one must be a parent in the first instance in order to prove oneself an "eligible parent." Only "parents" can be "eligible parents." By claiming he is an "eligible parent," Poole is assuming that he is a "parent." In our view, both section 2—2 and section 9—3 share a requirement that one must be a "parent." We note that the Probate Act does not define the term "parents." The Illinois Parentage Act of 1984, however, provides us with guidance in this area. By its terms, the Parentage Act applies to "any civil action *** if parentage is at issue." 750 ILCS 45/9 (West 1998). As the appellate court has recognized,

> " '[P]arentage is at issue' whenever a parent and child relationship is the basis for some 'right, privilege, duty or obligation' [citation], but such a relationship has not been established (or presumed) as provided for in the Parentage Act. Simply because no party disputes biological parentage is not a sufficient basis for concluding that a case is not one where 'parentage is at issue.' " *Kapp v. Alexander*, 218 Ill. App. 3d 412, 416 (1991).

Section 2 of the Parentage Act states that "[a]s used in this Act, 'parent and child relationship' means the legal

relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes *** the father and child relationship." 750 ILCS 45/2 (West 1998). Our appellate court has held that the legislature "used the expressions 'parent and child relationship,' *** and 'father and child relationship' as terms of art" throughout the Parentage Act as a whole in order to "refer to something more than simply biological relationships and are meant to include the legal relationships." *Kapp*, 218 Ill. App. 3d at 416. The right of a parent to serve as an administrator of his or her child's estate (and inherit from the child) derives from the parent and child relationship. We therefore believe that the question regarding the order of preference for the administration of this estate presents as an issue the parentage of Madison and that the Parentage Act is the statutory mechanism that serves to legally establish parent and child relationships in Illinois.

Section 4 of the Parentage Act states:

"How Parent and Child Relationship Established. The parent and child relationship between a child and
***
*** the natural father may be established under this Act[.]" 750 ILCS 45/4 (West 1998).

Paternity can be established by a number of means under the Parentage Act. For example, section 5 of the Parentage Act contains a list of circumstances under which fatherhood may be presumed. See 750 ILCS 45/5 (West 1998). However, none of those circumstances exist in this case, so Poole cannot be presumed by law to be Madison's natural father. Therefore, it must be judicially determined that Poole was Madison's father if he is to be appointed administrator over Clausen.

Poole acknowledges the relevance of the Paternity Act and argues that he has presented evidence which establishes his parentage of Madison under the Act. Poole

maintains that he signed an affidavit in which he acknowledges that he was the father of Christina's child. He points to the certificate of fetal death, which lists him as the natural father, and argues that these facts are undisputed. Indeed, much of Poole's argument in this court is based on statements like the following: "It is clear that Randy Poole was the biological father of Madison Rae Poole, that he established a parental relationship with the child, and that as the biological father he is the sole surviving parent." However, while all of this may be true, Poole is not, as of now, recognized as such in the *legal* sense. Poole claims he established a parent/child relationship by consent pursuant to section 6 of the Parentage Act because he signed "a voluntary acknowledgment of parentage in accordance with section [12] of the Vital Records Act," *i.e.*, the fetal death certificate. Poole maintains that he also complied with the requirements of section 6 by filing an affidavit of parentage in this probate action. We disagree.

Section 6 of the Parentage Act refers to section 12 of the Vital Records Act. See 750 ILCS 45/6(a) (West 1998). Section 12 of that act pertains only to live births and the certificates that attend to such events. 410 ILCS 535/12 (West 1998). It does not include fetal death certificates. Moreover, section 12 does not speak of affidavits of parentage such as what was filed in this case. 410 ILCS 535/12 (West 1998). We therefore conclude that none of Poole's unilateral actions alone satisfy the statutory criteria to establishing paternity by consent under section 6 of the Parentage Act.

In our view, it is section 7 of the Parentage Act that is applicable to this case. Section 7 allows for a man "alleging himself to be the father of the child or expected child" to bring an action by verified complaint. 750 ILCS 45/7 (West 1998). Under this section, a hearing is held and a finding of the court is entered as to paternity. Like

the appellate court, we believe that this case must be remanded for a hearing in which Poole may establish his paternity of Madison pursuant to section 7 of the Parentage Act.

Clausen, however, maintains that such a hearing would be inappropriate because the Parentage Act only serves to establish paternity in cases where a living, illegitimate child has been born: "The only method to establish parentage of an illegitimate is following birth." In support of this statement, she points to subsection (e) of section 7, which states that if an action is brought under section 7 "before the birth of the child, all proceedings shall be stayed until after the birth, except for service or process, the taking of depositions to perpetuate testimony, and the ordering of blood tests under appropriate circumstances." 750 ILCS 45/7(e) (West 1998). We do not read this language as preventing a determination of parentage in cases such as this. The Paternity Act does not contain a definition of the word "birth." In such cases, when interpreting statutes, this court gives undefined words their plain and ordinary meaning. See *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 181 (1993). Webster's Dictionary defines "birth" as "the act of coming forth from the womb" (Webster's Third New International Dictionary 221 (1986)) and defines "stillbirth" as the "birth of a dead fetus." Webster's Third New International Dictionary 2243 (1986). With respect to the word "stillbirth," Webster's urges the reader to compare it with "live birth," which it defines as a "birth in such a state that acts of life are manifested after the extrusion of the whole body." Webster's Third New International Dictionary 1324 (1986). Accordingly, a stillbirth is by definition a "birth." In our view, subsection (e) refers only to staying proceedings while the fetus remains *in utero*.

In light of the above, we agree with the appellate court, albeit for different reasons, that a hearing to determine whether Poole was Madison's natural father is appropriate in this case. At such a hearing, Poole is free to adduce the evidence he has presented here to establish his paternity. We also note that the record makes clear that DNA testing in this case is readily available because tissue samples have been preserved. If it is determined that Poole is Madison's parent, *i.e.*, father, he would, pursuant to section 9—3, take precedence over Clausen for the administering of letters of the estate, which was the procedural question raised by the petition filed by Poole in the circuit court. Moreover, by requiring Poole to establish his parentage under the Parentage Act, we have guarded, to an extent, against the danger of fraudulent claims of paternity being asserted in cases such as this.

We caution that our resolution of this matter is not meant to answer the question of whether Poole was an "eligible parent" under section 2—2 of the Probate Act, for purposes of inheriting from Madison. Although we do not determine whether Poole is an "eligible parent" as defined in section 2—2 because that question is not technically before us, we will comment on the issue briefly so as to provide guidance to the lower courts. Clausen has maintained throughout the course of this litigation that under the plain language of section 2—2, Poole does not qualify as an eligible parent because Madison never lived. Thus, according to Clausen, Poole could not have met any of the statute's requirements "during the decedent's lifetime." We reject this argument. Illinois law allows parents to recover for the wrongful death of a fetus. See *Seef*, 145 Ill. 2d 336. In *Seef*, we recognized that the parents of a stillborn baby are presumed to have suffered a loss of the child's society. In so doing, we rejected the argument that a parent and

child relationship cannot be realized during gestation. We have previously noted that, under the Wrongful Death Act, "next of kin" determinations for purposes of damages distributions are guided by the rules of intestacy as set forth in the Probate Act. To interpret section 2—2 as Clausen suggests would deny illegitimate fathers the means to recover for the wrongful death of their stillborn children. We will not construe section 2—2 in such a manner. Section 2—2 evinces our General Assembly's intent to allow only the parents of illegitimate children *who have demonstrated an interest in their illegitimate children* to inherit by intestate succession, which is a legitimate state interest. See *In re Estate of Hicks*, 174 Ill. 2d at 440-41. As our appellate court has aptly noted,

> "While section 2—2 of the Probate Act governs the rules of inheritance, we understand that the 'eligibility' requirements of section 2—2 may overlap with those factors considered by the trial court when determining the degree of dependency under the Wrongful Death Act. Both the eligibility requirements of section 2—2 of the Probate Act and the determination of the degree-of-dependancy requirement of section 2 of the Wrongful Death Act address similar policy concerns, namely, preventing absentee parents from obtaining more than the share to which they are entitled." *Johnson*, 334 Ill. App. 3d at 593.

We therefore reject Clausen's contention that, because stillborn fetuses never live, illegitimate fathers of stillborns cannot establish themselves as "eligible parents" under section 2—2. We do not believe that the legislature intended section 2—2 to have the blanket effect of debarring all illegitimate fathers from recovering for the wrongful deaths of their stillborn children. We read section 2—2 simply as a method of insuring that such fathers must prove that they are parents in more than the genetic sense, *i.e.*, that they are "eligible," before they can take under the line of intestate distribution. We note that our conclusion as to this matter avoids Poole's suggestion that Clausen's position renders sec-

tion 2—2 unconstitutional in that it discriminates against the fathers of illegitimate stillborns. See *People v. Fisher*, 184 Ill. 2d 441, 448 (1998) (holding that court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it can reasonably do so).

### CONCLUSION

In view of the foregoing, the judgment of the appellate court, reversing the order of the circuit court, is affirmed, and the cause is remanded to the circuit court for further proceedings consonant with this opinion.

*Appellate court judgment affirmed;*
*cause remanded.*